UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JAMES GRANT,

                Petitioner

        v.                               C-1-03-896

ANTHONY J. BRIGANO, WARDEN,

                Respondent

## ORDER

This matter was referred pursuant to 28 U.S.C. § 636 to the United States Magistrate Judge for consideration and report on the Petition for Writ of Habeas Corpus filed by the petitioner pursuant to 28 U.S.C. § 2254.  The matter is before the Court upon the Report and Recommendation of the Magistrate Judge (doc. no. 20), upon petitioner's objections thereto (doc. no. 21), respondent's reply (doc. no. 23) and petitioner's response thereto (doc. no. 24).   The Magistrate Judge recommended that the Petition for Writ of Habeas Corpus be denied with prejudice. The conclusions and recommendations of the Magistrate Judge follow.

REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this case pro se seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. §2254.  This matter is before the Court upon the petition (Doc. 1), respondent's return of writ and exhibits thereto (Docs. 12, 14), petitioner's response/traverse (Doc. 15), and petitioner's supplemental memoranda and authority. (Doc. 17, Exhs. A-C; Doc. 18).

2

## I.    FACTS

This case involves the following facts, as summarized by the First District

Ohio Court of Appeals[1]:

> Grant's convictions arose from the murder of Antwaun Gilliam and the robberies of Darrick Frazier and Steven Franklin. According to the testimony of Frazier, Gilliam, accompanied by Franklin, had called out to him from below the window of Frazier's girlfriend's apartment. Franklin wanted to buy two ounces of crack cocaine from Frazier. Frazier, Franklin, and Gilliam met at Lakesha Bryant's apartment, where Frazier resided, to complete the transaction. Having forgotten his key, Frazier knocked on the apartment door, and Bryant, who had been sleeping, let them in. She then returned to her bedroom.

> Frazier entered the bedroom, went to a safe containing his cocaine, cut what he thought appeared to be two ounces, and brought it to the kitchen to weigh. (Apparently, Gilliam was not in the apartment at this time.) When Gilliam returned, Grant followed him, uninvited, through the door. Grant told Frazier that he wanted to buy $100 of crack cocaine. Frazier said that he did not have any cocaine for sale. Grant then instructed Angelo Fears to enter the apartment.

> Grant put a gun in Frazier's face, grabbed him, and pushed him into a chair. When Frazier tried to run for the door, Grant stopped him. Grant then said, "Lay that shit down," to Gilliam, Frazier, and Franklin. Grant instructed Fears, "Kill one of them niggers." Fears asked which one and pointed his gun toward Gilliam and then toward Franklin. When Fears pointed his gun at Gilliam, Grant said, "Not him." Gilliam and Franklin lay on the floor. Frazier sat on a chair. The men begged Grant and Fears to spare their lives.

---

[1]      The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1); *see McAdoo v. Elo*, 365 F.3d 487, 493-94 (6th Cir. 2004).

3

Grant took the two ounces of crack and demanded that Frazier remove his gun from his pocket.  He also took Frazier's rings, a bracelet, and $280.  When Frazier told Grant that he had no more cocaine, Grant struck him across the face with his gun.  Grant then walked back to Bryant's children's bedroom in search of more drugs.  At that point, Fears stuck a gun in Gilliam's buttocks and threatened to kill him.  Grant came out of the bedroom, walked around Fears, and then made his way back to Bryant's bedroom.  While Grant was in Bryant's bedroom, Fears shot Gilliam.  Franklin escaped by jumping out a window.

Grant re-entered the room where the men were gathered and asked for whatever drugs remained in the apartment.  Frazier took him to Bryant's room.  Grant pushed Frazier onto the bed where Bryant was sitting and grabbed a bag containing twenty-eight ounces of crack cocaine.  He then placed a gun in Frazier's face.  After stating, "Nigger, I should kill you," Grant walked out the bedroom door.  A few minutes later, Frazier yelled for someone to call the police.

According to Franklin's testimony, only he and Frazier had initially entered Bryant's apartment.  Franklin had $2,000 with him to purchase two ounces of crack cocaine for $1,400.  After Frazier brought a grocery bag from Bryant's back bedroom, they heard a knock on the door.  Frazier opened the door and Gilliam entered, followed closely by Grant.

Grant asked for $100 in drugs, and Frazier agreed to sell it to him.  But Grant pulled a gun, told the men to "lay it down," and directed them to lie on the floor.  Fears then walked in with a gun.  Fears patted down the men.  Franklin dropped $2,000 on the floor, which Fears picked up.  Franklin heard Grant say, "No, don't shoot him," or something similar, before Grant left the room.  Franklin testified at trial that Grant had been directing Fears, and that Grant said to Fears, "Just shoot him, and then he was like, no, don't shoot him."  Franklin further testified that Grant then said, "Don't shoot none of them."  In contrast, Franklin had previously told the police that Grant had said, "No, don't shoot him, shoot Franklin."

4

Bryant testified that Frazier lived with her and that they had a platonic relationship.  On the night of the murder, Frazier knocked on her apartment door, and she opened the door to allow Frazier and Franklin to enter.  Frazier retrieved his keys and his jacket and left, while Franklin remained behind.  When Frazier returned, Bryant went back to her bedroom.

Bryant was soon awakened by voices.  She heard someone say, "Lay down, give me everything."  She then screamed, "Don't hurt my baby."  She also heard someone say, "Let me see you back off on this motherfucker."  She recognized Grant's voice in particular as he said,"Shoot that nigger."  Subsequently, she heard the door to her child's room open and close, and she then saw Grant, whom she recognized, enter her room.  The first thing he said was that everything was going to be all right.  Grant asked whether she had called the police.  When she replied that she had not, he removed the telephone from her room.  He pointed his gun at her and said, "Shoot that nigger."  She kept begging him not to hurt her baby.  While Grant was in her bedroom, Bryant heard a gunshot.

After the gunshot, Grant left the bedroom.  He returned with Frazier, pushed him onto the bed, held a gun to his head, and forced Frazier to open the safe.  Bryant heard Grant tell Frazier that he should shoot him.  Frazier begged him not to.  Grant left the room and Frazier followed.  A few minutes later, Bryant heard Frazier screaming that "they shot his nigger."  Bryant called 911.  Soon after the incident in Bryant's apartment, Bryant, Frazier, and Franklin each identified their assailants as Grant and Fears, men they knew from the neighborhood.  All three victims testified that they were terrified during the incident.

Grant later provided several statements to the police.  In his final statement, he admitted going into Bryant's apartment to rob Frazier.  Fears had provided Grant with a gun.  Upon entering the apartment, Grant and Fears ordered the men to lie on the floor.  Grant pulled out his gun when Frazier panicked and pushed him.  Grant stated that money and drugs were on the table, and that Franklin had thrown some money on the floor.  Grant ordered Frazier to get the rest of the drugs and money.  Grant followed Frazier to Bryant's bedroom, where Frazier removed a bag from the safe and Grant grabbed it.

Grant then heard a gunshot. Frazier ran for the door of the apartment, and Fears hit him. Fears and Grant left in a van Grant had borrowed. While Grant drove around, they split the money and the drugs. Grant threw his share of the money under a parked car and passed the drugs to a friend. Fears gave Grant the murder weapon, which Grant then gave to his uncle's friend. The friend gave the gun to Grant's uncle. It was recovered from a closet in the uncle's house.

Part of Grant's defense at trial was that he had been under the influence of alcohol and/or drugs when the murder occurred. Both Bryant and Frazier testified that Grant had appeared "high."

(Doc. 14, Exh. I at pp. 3-7).

## II. PROCEDURAL HISTORY

Petitioner was indicted by the Hamilton County Grand Jury in April 1997 on four (4) counts of Aggravated Murder (R.C. §2903.01(A)), with Death-Penalty Specifications, including a Kidnapping and an Aggravated Robbery Specification attached to each count; one (1) count of Aggravated Burglary (R.C. §2911.11(A)(1)); three (3) counts of Aggravated Robbery (R.C. §2911.01(A)); and, four (4) counts of Kidnapping (R.C. §2905.01(A)(2)). Firearm specifications were also attached to each of the twelve (12) counts. (Doc. 14, Exh. A).

On October 8, 1997, a jury found petitioner guilty of: four (4) counts of Involuntary Manslaughter (a lesser-included offense of Aggravated Murder); one (1) count of Aggravated Burglary; two (2) counts of Aggravated Robbery; and, three (3) counts of Kidnapping, as well as the accompanying Firearm Specifications. The jury acquitted petitioner of one (1) count of Aggravated Robbery and one (1) count of Kidnapping. (Doc. 14, Exh. B). On October 31, 1997, the trial court sentenced

petitioner to: ten (10) years for the merged counts of Involuntary Manslaughter; three (3) years on the Gun Specifications; and, ten (10) years on each of the remaining counts. The court ordered the sentences to be served consecutively, for a total of seventy-three (73) years. (Doc. 14, Exhs. C–E).

Represented by new counsel, petitioner filed a timely appeal of his convictions and sentences raising seven assignments of error:

> 1. The court imposed an erroneous consecutive and maximum sentence.
>
> 2. The sentences imposed should have been consolidated as allied offenses.
>
> 3. The state engaged in prosecutorial misconduct.
>
> 4. The convictions for manslaughter and kidnapping are against the manifest weight of the evidence.
>
> 5. The court committed reversible error in not requiring exclusion of prosecution witness testimony.
>
> 6. The court erred in requiring closure of the courtroom and surrounding areas.
>
> 7. The court erred in not suppressing coerced statements of the Appellant.

(Doc. 4, Exh. G). On March 23, 2001, the First District Court of Appeals issued an opinion affirming the trial court's judgment as to the findings of guilt on all counts. (Doc. 4, Exh. I). However, the court of appeals reversed the sentence in all respects except those relating to the specifications and remanded the case back to the trial court (1) to resentence petitioner on all counts, excluding the firearm

specifications, after providing supporting reasons for appropriate statutory findings, (2) to merge, for purposes of sentencing, the kidnapping and aggravated−robbery counts pertaining to Frazier and (3) to merge, for purposes of sentencing, the kidnapping and aggravated−robbery counts pertaining to Franklin. (Doc. 14, Exh. I at 26).

Petitioner, through counsel, timely appealed to the Supreme Court of Ohio and raised the following propositions of law:

> **Proposition of Law No. 1**: The Court Violated The Sixth Amendment
> By Closing The Courtroom During Trial.

> **Proposition of Law No. 2**: The State Engaged In Prosecutorial
> Misconduct During Closing Arguments.

(Doc. 14, Exh. L). The State filed a memorandum in response. (Doc. 14, Exh. M). On July 25, 2001, the Supreme Court of Ohio denied Grant leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 14, Exh. N).

On August 27, 2001, the trial court resentenced Grant. (Doc. 14, Exh. O). In imposing the sentences, totaling a period of incarceration of fifty−three (53) years, the trial court merged the appropriate counts and imposed maximum consecutive sentences on the remaining counts. (Doc. 14, Exhs. Q, R). On September 26, 2001, Grant, through the same counsel, filed a Notice of Appeal with the First District Court of Appeals, raising the following two assignments of error:

8

1. The trial court erred in imposing maximum consecutive sentences.

2. The judge had an unsubstantiated bias against Appellant which rendered the sentence unfair.

On June 5, 2002, the state appellate court issued its Judgment Entry overruling both of Grant's assignments of error. (Doc. 14, Exhs. U, V).

On July 18, 2002, Grant, through the same counsel, filed a Notice of Appeal before the Supreme Court of Ohio and raised the following propositions of law:

**Propositions of Law No. 1**: The Court Erred In Imposing Maximum, Consecutive Sentences.

**Propositions of Law No. 2**: The Judge Had An Unsubstantiated Bias Against The Appellant Which Rendered The Sentence Unfair.

(Doc. 14, Exhs. W, X). On October 2, 2002, the Supreme Court of Ohio issued an Entry denying Grant leave to appeal and dismissed the appeal as not involving any substantial constitutional question. (Doc. 14, Exh. Z).

On December 19, 2003, petitioner filed a pro se Petition for Writ of Habeas Corpus in this Court raising the following grounds for relief:

**Ground one**: Appellant's consecutive, maximum sentences are illegal. **Supporting FACTS**: The applicant in this case is not a repeat offender in an aggravated nature, nor was his crime the "worst" form of the offense. According to testimony of state's witness Appellant stated "Not to shoot anyone." Therefore lacking intent. Thus, the court violated Fourteenth Amendment right to Due Process by imposing maximum and consecutive sentences.

**Ground two**: The sentence imposed should have been consolidated as allied offenses of similar import.

**Supporting FACTS**: Because of the nature of the crime and the individual circumstances of the case, in order to complete the robbery, it was necessary to secure the victims and goes "hand in hand" with the robbery. And thus, did not require separate animus, one could not be accomplished without the other. Therefore, court violated Appellant's right to procedural due process in their finding of separate animus, giving the appellant multiple sentences.

**Ground three**: The prosecutor engaged in prosecutorial misconduct which rendered the trial inherently unfair.

**Supporting FACTS**: The Appellant's Fourteenth Amendment rights were violated where the prosecutor held 'valuable' evidence of impeachment, inconsistent statement's (sic) by state witnesses, until the first day of the trial, in violation of Brady v. Maryland, and the duty to disclose all material exculpatory evidence. This contributed to counsel's "unpreparedness", trial counsel could not defend against any evidence so withheld. Further, Prosecutor expressed his/her personal opinion as to the guilt or innocence of the accused which is inappropriate, leading and unconstitutional.

**Ground four**: Convictions are against the manifest weight of the evidence.

**Supporting FACTS**: Because of the allied offenses of similar import, the appellant contends his innocence of the kidnapping charge and denies involvement in use of fear or intimidation. Therefore the trial court erred in finding of guilt.

**Ground five**: The trial court committed reversible error in not requiring exclusion of prosecution witness testimony.

**Supporting FACTS**: The trial court dangerously erred in violating the sequestration order by allowing Steve Franklin, an upcoming state's witness, to discuss testimony with Darrick Fraser (sic), a witness who had just completed his testimony, thereby denying Appellant his Sixth and Fourteenth Amendment right to a fair trial free from prejudice.

**Ground six**: The court erred in requiring the closure of the courtroom and surrounding areas.

**Supporting FACTS**: It is the appellant's Sixth Amendment right to a public trial, and the trial court erred by denying this right for no logical or apparent reason.

**Ground seven**: The trial court erred in not suppressing the coerced statements of the Appellant.

**Supporting FACTS**: It has long been established that a coerced statement is considered involuntary and must be suppressed, and should not stand. The court erred in the admission of statements which were coerced from the appellant in violation of his Fifth Amendment right.

**Ground eight**: The trial court judge had an unsubstantiated bias against the appellant which rendered the sentence unfair.

**Supporting FACTS**: Inappropriate comments by the trial judge in reference to the (sic) were biased and prejudicial to appellant and were outside of the required statutory findings, denying the appellant fair and impartial treatment through all proceedings.

(Doc. 1).

## III.  Grounds Two, Four, Five and Seven of the petition are procedurally defaulted.

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action.  *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971).  A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement.  *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99–100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985).  If he fails to do so,

11

he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In his first direct appeal to the First District Court of Appeals, petitioner raised the same claims set forth in Grounds Two, Four, Five and Seven of the instant petition: the sentence imposed should have been consolidated as allied offenses of similar import (Ground Two); the convictions are against the manifest weight of the evidence (Ground Four); the trial court committed reversible error in not requiring exclusion of prosecution witness testimony (Ground Five); and the trial court erred in not suppressing the coerced statements of the Appellant (Ground Seven). However, petitioner failed to present these claims to the Supreme Court of Ohio on either of his appeals to that court. Petitioner committed a procedural default by failing to present these claims to the Supreme Court of Ohio on direct appeal.[2] *See Leroy*, 757 F.2d at 99–100. Petitioner has thus waived

---

[2]     Petitioner argues that because his Memorandum in Support of Jurisdiction to the Supreme Court of Ohio referenced the seven issues raised before the First District Court of Appeals (Doc. 14, Exh. L at 5-6), the four

12

those claims for purposes of federal habeas corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error. *See id.* Consequently, petitioner is now barred by his procedural default from pursuing relief in the state courts of Ohio. *Leroy*, 757 F.2d at 100.

When a state prisoner is barred by a procedural default from raising a constitutional claim in the state courts, he may not litigate that claim in a § 2254 habeas corpus proceeding without showing cause for and actual prejudice from the default. *Engle v. Isaac*, 456 U.S. 107, 129 (1981); *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977). Absent such a showing, the prisoner will be held to have waived his claims. *Leroy*, 757 F.2d at 97.

Petitioner fails to argue cause and prejudice to excuse this default. Nor has he made a colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice which would permit review of his defaulted claims even though cause and prejudice have not been established. *See McCleskey v. Zant*, 499 U.S. 467, 494–95 (1991); *Murray*, 477 U.S. at 496. Accordingly, petitioner's second, fourth, fifth and seventh grounds for relief are procedurally defaulted and waived for purposes of federal habeas corpus review.

## IV. The Sixth Ground for relief is waived.

In his Sixth Ground for relief, petitioner asserts the trial court erred in

---

grounds for relief at issue here were presented to the State's highest court. His argument is without merit. These general statements were not sufficient to put the Supreme Court of Ohio on notice of petitioner's federal constitutional claims because he failed to present the factual and legal underpinnings of such claims. *See Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987).

13

requiring the closure of the courtroom and surrounding areas in violation of his right to a public trial under the Sixth Amendment. Respondent contends that petitioner has waived habeas review of this claim under the doctrine of invited error. The Sixth Circuit in *Fields v. Bagley*, 275 F.3d 478 (6th Cir. 2001) explained the doctrine as follows:

> The doctrine of "invited error" is a branch of the doctrine of waiver in which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside. *Harvis v. Roadway Express, Inc.*, 923 F.2d 59, 61 (6th Cir. 1991). When a petitioner invites an error in the trial court, he is precluded from seeking habeas corpus relief for that error. *See Leverett v. Spears*, 877 F.2d 921, 924 (11th Cir. 1989); *Draughn v. Jabe*, 803 F. Supp. 70, 75 (E.D. Mich. 1992).

275 F.3d 478, 485-86. In accordance with this doctrine, "'[a]n attorney cannot agree in open court with a judge's proposed course of conduct and then charge the court with error in following that course.'" *United States v. Aparco-Centeno*, 280 F.3d 1084, 1088 (6th Cir. 2002) (quoting *United States v. Sloman*, 909 F.2d 176, 182 (6th Cir. 1990). *See also U.S. v. Brika*, 416 F.3d 514, 525 (6th Cir. 2005) (counsel's decision to permit the judge to speak to jury in jury room was an invited error that did not result in prejudice to defendant), *cert. denied*, 2006 W.L. 387120 (U.S. Feb. 21, 2006).

14

In the instant case, the state court of appeals on direct appeal found that petitioner was in agreement with the trial judge's decision to close the courtroom on the seventh day of trial:

> The record demonstrates that when the trial court indicated that it was considering closure due to disturbances and possible intimidation of the jury, counsel indicated that Grant had stated he had "absolutely zero problem" with excluding everyone but himself, the attorneys, and court personnel. Grant himself stated on the record that he was in agreement with clearing the courtroom.

(Doc. 14, Exh. I at 21).  While the court of appeals determined that the "wholesale exclusion of the public from the courtroom was error," *Id.*, the court declined to find reversible error under the doctrine of invited error:

> Even so, we find no merit in this assignment because Grant invited the error of which he complains.  The doctrine of invited error precludes a party from taking advantage of an error that the party has induced or invited.  Invited error occurs "when a party has asked the court to take some action later claimed to be erroneous, or affirmatively consented to a procedure the trial court proposed.  The record clearly indicates that Grant more than merely acquiesced to the trial court's proposal—he affirmatively consented to the procedure.

(Doc. 14, Exh. I at 22, citations omitted).

Petitioner contends the record is devoid of any "colloquy between the trial court and Petitioner, that would ensure the waiver of the right to a public trial on behalf of Petitioner as being voluntary, knowing, and intelligent." (Doc. 15 at 5–6). Contrary to petitioner's contention, the transcript shows he was in full agreement with the closure of the courtroom.  In response to the trial judge's inquiry, petitioner's counsel responded that he "explained the situation" to Mr. Grant and

15

"he indicated that he has absolutely zero problem, no problem whatsoever with no one being here except Mr. Schmidt and myself and him.  He wants a fair trial in this matter." (Doc. 14, Exh. E, Transcript at 1567).  Defense counsel continued, "I'd just ask one question of Mr. Grant to make sure that's still his feeling." *Id.*  The discussion continued:

| | |
|---|---|
| Defense Counsel: | Mr. Grant, did I explain everything I told you thus far in front of the Court here? |
| The Defendant: | Yes, sir. |
| The Court: | And do you want the jury to be free of any kind of pressure? |
| The Defendant: | Yes, sir. |
| The Court: | Are you in agreement that we should clear the courtroom except people who are obviously courtroom personnel, your attorneys and the prosecutors? |
| The Defendant: | Yes, sir. |

(Doc. 14, Exh. E, Transcript at 1568).

In view of the above, the Court concludes that petitioner procedurally defaulted this claim in the state court by inviting the error.  Petitioner has not shown cause and prejudice to excuse the default, nor a fundamental miscarriage of justice in the absence of the Court's consideration of this claim.  Accordingly, petitioner's sixth ground for relief is procedurally defaulted and waived for purposes of federal habeas corpus review.

## V. The First Ground for relief is procedurally defaulted.

Petitioner's First Ground for relief asserts that the trial court violated his Fourteenth Amendment right to Due Process by imposing maximum and consecutive sentences. Petitioner contends his consecutive, maximum sentences are illegal because he "is not a repeat offender in an aggravated nature, nor was his crime the 'worst' form of the offense." (Doc. 1). Respondent contends that the First Ground for relief involves state law issues only that are not cognizable in federal habeas corpus and that petitioner procedurally defaulted this claim by failing to fairly present it in the state courts. Petitioner, in reply, contends that while his counsel relied on state law cases in the state court appeals (Doc. 14, Exh. X at 4–10), such state cases applied a constitutional analysis and thus fairly presented the federal constitutional claim to the state courts. (Doc. 15 at 6–7). He also argues, on the merits of his claim, that he "had never served prison time, nor did he represent the criteria for the worst case scenario" and thus "it was inconceivable as to what facts the trial court relied on to determine Petitioner posed the 'greatest risk' of recidivism." (Doc. 15 at 7).

As an initial matter, the Court is precluded from reviewing this claim to the extent petitioner contends he is entitled to relief based on alleged violations of state statutory and constitutional law. A federal court may review a state prisoner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws or treaties of the United States, and not "on the

basis of a perceived error of state law." 28 U.S.C. § 2254(a); *Pulley v. Harris,* 465 U.S. 37, 41 (1984); *see also Estelle v. McGuire,* 502 U.S. 62, 67–68 (1991) ("it is not the province of a federal court to reexamine state-court determinations on state-law questions").  Therefore, this federal court cannot consider petitioner's claim that the facts of his case did not fit the criteria of the Ohio statute for imposition of the maximum sentences, but only whether the alleged error violated petitioner's federal constitutional right to due process.  However, as respondent correctly contends in the return of writ, petitioner has waived any such constitutional claim because he failed to present it as a federal issue to the Ohio courts.

It is well-settled that in order to satisfy the "fair presentation" requirement, a habeas corpus petitioner must present both the factual and legal underpinnings of his claims to the state courts. *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *cert. denied,* 532 U.S. 958 (2001); *Franklin v. Rose,* 811 F.2d 322, 325 (6th Cir. 1987).  This means the petitioner must present his claims to the state courts as federal constitutional issues and not merely as issues arising under state law. *Franklin,* 811 F.2d at 325 (citing *Koontz v. Glossa,* 731 F.2d 365, 368 (6th Cir. 1984)); *see also Prather v. Rees,* 822 F.2d 1418 (6th Cir. 1987).

A set of four guidelines has been developed for determining whether a claim was presented in such a way as to alert the court of the claim's federal nature. *McMeans,* 228 F.3d at 681.  Under these guidelines, a petitioner may fairly present to the state courts the constitutional nature of his claim by (1) relying on federal

cases employing constitutional analysis; (2) relying on state cases employing constitutional analysis in similar factual contexts; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law. *Id.*; *Franklin,* 811 F.2d at 326.  The use of a "generalized catch-all phrase," which merely alleges the denial of a fair trial under the United States Constitution, does not adequately alert the state courts of the constitutional nature of the claim where the "only legal theory presented to the state courts was predicated entirely upon state evidentiary law." *Franklin,* 811 F.2d at 326.  General statements that the petitioner was denied a "fair trial" and "due process" are not sufficient to put state courts on notice of a specific federal constitutional claim in the absence of citation to case law employing federal constitutional analysis. *McMeans,* 228 F.3d at 681.

In this case, petitioner failed to fairly present to the Ohio courts the federal due process claim alleged in Ground One of the petition.  In his brief to the Supreme Court of Ohio, petitioner relied solely on state cases construing the requirements set forth in the Ohio sentencing statute in arguing that he was entitled to a new re-sentencing hearing. (*See* Doc. 14, Exh. X at 4-10).  Contrary to petitioner's argument, none of those state cases employed a federal constitutional analysis.[3]  Likewise, his contention that the record fails to support

---

[3]      *See* Doc. 14, Exh. X at 4-10 and petitioner's citation to *State v. Moore*, 140 Ohio App.3d 278, 747 N.E.2d 281 (Ohio App. 1 Dist. Sep 29, 2000); *State v. Mays*, 139 Ohio App.3d 177, 743 N.E.2d 447 (Ohio App. 1 Dist. Jul 28,

his sentence and that the trial court failed to provide adequate reasons for imposing the maximum and consecutive sentences as required by Ohio's sentencing statute are premised on the application of state law to his case. Because the only legal theories petitioner presented were predicated entirely on state statutory law, the Ohio courts were not placed on notice of a specific federal constitutional claim. *See Franklin,* 811 F.2d at 326. The Ohio Court of Appeals was the only state court to address the merits of petitioner's claims of error in sentencing. Because that court was not placed on notice of any constitutional claim, it addressed the sentencing issues as argued by petitioner, solely in terms of state law, and affirmed the trial court's judgment based on its state-law determinations that the trial court complied with state statutory requirements in sentencing petitioner to maximum and consecutive sentences and that there was clear and convincing support in the record for the trial court's sentencing decision. (*See* Doc. 14, Exh. U at 2-4).

---

2000); *State v. Levy*, 2001 W.L. 497094 (Ohio App. 1 Dist. May 11, 2001); *State v. Rowland*, 2001 W.L. 497090 (Ohio App. 1 Dist. May 11, 2001).

20

By thus failing to fairly present the federal constitutional claim alleged in Ground One to the Ohio courts, petitioner committed a procedural default. Therefore, he has waived this claim for purposes of federal habeas corpus review unless he establishes cause for the default and actual prejudice as a result of the alleged error, or demonstrates that failure to consider the claim will result in a "fundamental miscarriage of justice." *See Coleman,* 501 U.S. at 750; *see also Murray,* 477 U.S. at 485.

Petitioner has not provided any justification as "cause" for his procedural default. He also has not shown that failure to consider his sentencing claim will result in a "fundamental miscarriage of justice." Thus, Ground One of the petition is waived to the extent petitioner alleges a violation of his federal due process rights.

To the extent petitioner claims his sentence is unconstitutional pursuant to the Supreme Court's holdings in *Blakely v. Washington*, 542 U.S. 296 (2004) and *United States v. Booker*, 125 S.Ct. 738 (2005) (Docs. 17, 18), his contention is without merit. In *Blakely*, the Supreme Court held that an enhanced sentence imposed by a judge under a state's sentencing statute, which was based on facts neither admitted by the defendant nor found by a jury, violated the Sixth Amendment to the United States Constitution. The reasoning of *Blakely* was extended by the Supreme Court to the United States Sentencing Guidelines in *United States v. Booker*, 125 S.Ct. 738 (2005), which held that the Sixth Amendment

as construed in *Blakely* applied to the Federal Sentencing guidelines and thus any fact that increases a defendant's sentence must be presented to a jury and proved beyond a reasonable doubt. *See Booker*, 125 S.Ct. at 155. These cases do not provide petitioner the relief he seeks because the Sixth Circuit has explicitly held that the new procedural rules set forth in *Blakely* and *Booker* do not apply retroactively to cases on collateral review. *See Humphress v. United States*, 398 F.3d 855, 860–63 (6th Cir. 2005). Therefore, a claim of error under *Blakely* and *Booker* cannot be raised in a petition for habeas corpus on collateral review where the underlying conviction became final prior to the *Blakely* and *Booker* decisions. *See, e.g.*, *Mayle v. United States*, 2005 W.L. 1154186, at *6–7 (N.D. Ohio May 16, 2005); *Mosby v. Turner*, 2005 W.L. 2175173 (M.D. Tenn. Aug 31, 2005); *Bowles v. Bell*, 2005 W.L. 1868906 (M.D. Tenn. Aug 04, 2005); *Williams v. Haviland*, 2005 W.L. 1566762 (N.D. Ohio July 01, 2005). Therefore, the Court may not consider whether petitioner's sentence is unconstitutional under *Blakely* and *Booker*.

## VI.  Ground Three of the petition is without merit.

In Ground Three of his petition, petitioner alleges that the prosecutor engaged in prosecutorial misconduct which rendered the trial inherently unfair. Specifically, petitioner contends his Fourteenth Amendment rights were violated when the prosecutor withheld impeachment evidence in the form of prior inconsistent statements by the State's witnesses until the first day of the trial in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Petitioner contends this

22

contributed to his counsel's "unpreparedness" at trial because counsel could not effectively defend against any evidence so withheld.  Petitioner also contends the prosecutor inappropriately expressed his personal opinion as to petitioner's guilt and thereby violated petitioner's constitutional rights.

The last state court to issue a reasoned opinion regarding Petitioner's claim of a *Brady* violation, the Ohio Court of Appeals, found the following:

> Grant first contends that the prosecutor violated the criminal rules of discovery by failing to turn over favorable impeachment evidence.  Specifically, he asserts that one of the assistant prosecutors had known that Bryant was going to provide testimony different from what had been related in discovery.  (What these specific differences were is not clear from the record.)  Grant also alleges that the same assistant prosecutor withheld material evidence when he failed to inform Grant before trial that Frazier would testify that Grant had taken $2,000 of crack cocaine from him, and not the $2,000 in cash that the state had indicated in its discovery responses.  After Frazier testified that Grant had taken the crack cocaine, the state conceded that that (sic) it had been told that Grant had stolen $21,000 in crack from Frazier a few days before Frazier's testimony.
>
> Grant also claims that the state withheld material evidence, where discovery had indicated that Franklin had told the police that Fears had taken $200 from him, but Franklin later testified that the amount taken by Fears was $2,000. Franklin testified that he had told the assistant prosecutor a few days before trial that Fears had actually taken $2,000 from him.
>
> * * *
>
> Grant conceded at trial that the information suppressed by the state regarding Bryant's testimony was not "really that harmful."  As to the discrepancies in Frazier's and Franklin's statements and their trial testimony, Grant's innocence was not dependent upon whether drugs or money were stolen, or whether $2,000 or $200 was stolen.  Thus, the change in the details was not material in and of itself.  The value of the evidence suppressed by the state allegedly resided in its impeachment capability.  Upon learning of the discrepancies, Grant's counsel effectively used the inconsistencies to discredit the testimony

of Frazier and Franklin and to raise questions about the tactics of the state.  Therefore, we cannot conclude that had the contested evidence been disclosed before trial, the result of the trial would probably have been different.

(Doc. 14, Exh. I at 12–14).

The factual findings of the state appellate court are entitled to a presumption of correctness in the absence of clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e)(1).  *See McAdoo v. Elo*, 365 F.3d 487, 493–94 (6th Cir. 2004); *Mitzel v. Tate*, 267 F.3d 524, 530 (6th Cir. 2001).  In addition, the decision of the Ohio Court of Appeals is binding on this Court unless it is contrary to clearly established law or was based on an unreasonable determination of the facts of record. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).   Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104– 132, 110 Stat. 1214 ("AEDPA"), a writ of habeas corpus may not issue with respect to any claim adjudicated on the merits in state court unless the adjudication either:

1.    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2.    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  The phrases "contrary to" and "unreasonable application" have independent meanings:

24

> A federal habeas court may issue the writ under the 'contrary to' clause if the state court applies a rule different from the law set forth in ... [Supreme Court] cases, or if it decides a case differently that we have done on a set of materially indistinguishable facts. The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from ... [the Supreme Court's] decisions but unreasonably applies it to the facts of a particular case. The focus on the latter inquiry is whether the state court's application of clearly established federal law is objectively unreasonable ... and an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694 (2002)(citation omitted). Upon review of the entire record, this Court concludes that petitioner has failed to establish that the findings of the state appellate court are unreasonable as to justify federal habeas corpus relief. *See Williams v. Taylor*, 529 U.S. 362 (2000).

Because petitioner essentially alleges his constitutional rights were violated as a result of the prosecution's withholding of evidence favorable to the defense, his claim is governed by the Supreme Court's decision in *Brady v. Maryland,* 373 U.S. 83 (1963). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. Impeachment evidence as well as exculpatory evidence "falls within the *Brady* rule." *United States v. Bagley*, 473 U.S. 667, 676 (1985). Evidence is deemed "material" under *Brady* "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Bagley,* 473 U.S. at 682. "A

'reasonable probability' is a probability sufficient to undermine confidence in the outcome" of the trial. *Id.* "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." *United States v. Agurs,* 427 U.S. 97, 109–10 (1976). This standard for determining materiality focuses on the defendant's guilt or innocence, rather than on the impact of the undisclosed evidence on the defendant's ability to prepare for trial. *Agurs,* 427 U.S. at 112 n.20.

The Ohio Court of Appeals found no *Brady* violation because the impeachment evidence at issue was not material to petitioner's guilt in and of itself and because the discrepancies in the witnesses' testimony did not undermine confidence in the trial's outcome. Petitioner has failed to demonstrate that the state court's conclusions in these regards were erroneous. In his traverse to respondent's return of writ, petitioner omits any argument or reference to this particular claim for relief. Accordingly, petitioner has failed to show that the state court's decision was contrary to or an unreasonable application of Supreme Court precedent as established in *Brady* and its progeny. Thus, petitioner is not entitled to habeas corpus relief on this aspect of his prosecutorial misconduct claim.

26

Petitioner also asserts a violation of his Fourteenth Amendment rights when the "Prosecutor expressed his/her personal opinion as to the guilt or innocence of the accused which is inappropriate, leading and unconstitutional." (Doc. 1 at 6–6A). This claim is procedurally defaulted because petitioner did not raise it as a discreet claim to the Supreme Court of Ohio.  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court." *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998).  In his brief to the Supreme Court of Ohio, petitioner claimed the prosecutor engaged in misconduct during closing arguments by attempting to bolster the credibility of a key prosecution witness, Lakesha Bryant, by giving his personal opinion on her credibility.  The prosecutor stated, "We heard from Lakesha Bryant, and Lakesha, in fairness I believe, was trying to tell the truth.  She is trying to live in difficult circumstances and I believe that she did tell you the truth.  Her testimony had that ring of truth to it." (Doc. 14, Exh. L at 9)[4].  However, in his petition for habeas corpus, petitioner framed the misconduct in terms of the prosecutor expressing a personal opinion regarding petitioner's guilt.  This is a different theory of prosecutorial misconduct than that presented to the state courts.  *See Shacks v. Tessmer*, 9 Fed. Appx. 344, 350 (6th Cir. 2001)  (analyzing separately witness vouching and personal opinion on guilt claims).  Therefore, this claim is procedurally defaulted and should be dismissed.

---

[4]    It is well-established that it is improper for a prosecutor to express personal beliefs and opinions concerning the credibility of a witness. *See United States v. Young*, 470 U.S. 1, 9-10 (1985); *United States v. Modena*, 302 F.3d 626, 634 (6th Cir. 2002).

## VII.  Ground Eight of the petition is without merit.

In his Eighth Ground for relief, petitioner alleges that the "trial court judge had an unsubstantiated bias against the appellant which rendered the sentence unfair." (Doc. 1).  Petitioner contends the trial judge made inappropriate comments at his re-sentencing hearing which were outside of the required statutory findings and denied petitioner a fair and impartial proceeding.  At issue are the following comments:

> I don't see any reason on God's green earth not to give you the maximum sentence. As I said before – I'll say it again – you're Exhibit A as to why we need maximum consecutive sentences.  I hope with all my heart that you are in excess of 70 years old when you get out of the State penitentiary.
>
> I'll probably be dead by then. But one thing my daughters won't have to worry about in the next 50 years is you.  They may have everything else to worry about, but one of the predators they will not have to worry about will be you.

(Doc. 14, Exh. Q at 13).

The Ohio Court of Appeals, the last state court to issue a reasoned opinion regarding this claim, found the following:

> The Ohio Supreme Court has held that a court may violate a defendant's due-process rights when it imposes a sentence that is based on improper considerations.  A court, however, is not required to divorce itself from all personal experiences and make its decision in a vacuum.  A sentencing court's personal considerations do not violate a defendant's due-process rights, when the court's comments are merely an expression of outrage at the great harm and tragic effects brought to the community by the defendant's crimes.
>
> Our review of the record reveals that the trial court, after making the statutorily required findings, [made the above remarks referenced by petitioner.]

28

> Given that theses remarks were made after the court had made all the requisite findings to justify the imposition of maximum and consecutive sentences, we fail to see how they prejudiced Grant. Furthermore, it appears that the court's reference to its family was merely indicative of its concern for the general public and not for any specific desire to protect its daughters.  Given that the trial court's reference to its daughters did not result in a violation of Grant's right to a fundamentally fair sentencing hearing, we overrule the second assignment of error.

(Doc. 14, Exh. U at 5, footnotes omitted).  In analyzing petitioner's claim, the Court of Appeals cited *State v. Arnett*, 88 Ohio St.3d 208, 724 N.E.2d 793 (2000), which in turn relied on Supreme Court precedent in *Barclay v. Florida*, 463 U.S. 939 (1983), *Gardner v. Florida*, 430 U.S. 349 (1977), *Witherspoon v. Illinois*, 391 U.S. 510 (1968), and *Townsend v. Burke*, 334 U.S. 736 (1948) on the issues of due process and fundamental fairness in sentencing proceedings.  This Court agrees that the reference to the trial judge's "daughters" during sentencing, in the context of the entire proceeding, was merely an expression of concern for public safety in general, a statutory factor under the sentencing rules, and not of a specific fear that petitioner might hurt the trial judge's daughters in particular.  Petitioner fails to address this claim in his traverse brief, and has failed to demonstrate that the Ohio Court of Appeals' decision was either "contrary to" or an "unreasonable application" of Supreme Court precedent concerning the trial judge's comments during sentencing proceedings. *Williams v. Taylor*, 529 U.S. at 405–407.  Therefore, Ground Eight of the petitioner is without merit and should be dismissed.

- 29 -

## CONCLUSIONS UPON *DE NOVO* REVIEW

Petitioner objects specifically to the Magistrate Judge's Report and Recommendation that Grounds Two, Four, Five and Seven are procedurally defaulted.

The Court substantially agrees with the analysis of the Magistrate Judge regarding Grounds Two, Four, Five and Seven. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state defendant with federal constitutional claims must first fairly present those claims to the state courts for consideration before raising them in a federal habeas corpus action. *See* 28 U.S.C. § 2254(b)(1), (c); *see also Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). A constitutional claim for relief must be presented to the state's highest court in order to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990); *Leroy v. Marshall*, 757 F.2d 94, 97, 99–100 (6th Cir.), *cert. denied*, 474 U.S. 831 (1985). If he fails to do so, he may have waived the unraised claims for purposes of federal habeas corpus review. *See Weaver v. Foltz,* 888 F.2d 1097, 1099 (6th Cir. 1989). If, because of a procedural default, a petitioner can no longer present his claims to a state court, he has waived them unless he can demonstrate cause for the procedural default and actual prejudice resulting from

the alleged constitutional errors, or that failure to consider the claims will result in a "fundamental miscarriage of justice." *Coleman v. Thompson,* 501 U.S. 722, 750 (1991); *see also Murray v. Carrier,* 477 U.S. 478, 485 (1986); *Engle v. Isaac,* 456 U.S. 107, 129 (1982); *Wainwright v. Sykes,* 433 U.S. 72, 87 (1977).

In his first direct appeal to the First District Court of Appeals, petitioner raised the same claims set forth in Grounds Two, Four, Five and Seven of the instant petition: the sentence imposed should have been consolidated as allied offenses of similar import (Ground Two); the convictions are against the manifest weight of the evidence (Ground Four); the trial court committed reversible error in not requiring exclusion of prosecution witness testimony (Ground Five); and the trial court erred in not suppressing the coerced statements of the Appellant (Ground Seven).  However, petitioner failed to list these claims as "Substantial Constitutional Questions" or even mention them in his argument section in his "Memorandum in Support of Jurisdiction" to the Supreme Court of Ohio on either of his appeals to that court. (Doc. 14, Exhs. L, X).

In his Objection to the Report and Recommendation of the Magistrate Judge, petitioner argues that he did "fairly present" his claims by presenting them to the Ohio Court of Appeals. As discussed supra, it is the long settled law of the United States Court of Appeals, Sixth Circuit that a claim must be presented to the highest court of a state in order to satisfy exhaustion requirements. *See Leroy*, 757 F.2d at 99-100.  Petitioner has thus waived those claims for purposes of federal habeas

- 31 -

corpus review because he did not provide the highest state court in Ohio with an opportunity to correct any alleged constitutional error. *See id.*

In the alternative, petitioner argues that he did present his claims to the Ohio Supreme Court by attaching the opinion of the Ohio Court of Appeals, in which he did raise the claims, to his "Memorandum in Support of Jurisdiction" to the Supreme Court. Citing *Reese v. Baldwin*, 282 F.3d 1184 (9th Cir. 2002) and *Wells v. Maas*, 28 F.3d 1005 (9th Cir. 1994), petitioner argues that a mere reference to his arguments in the court of appeals would be sufficient to alert the Supreme Court of Ohio to his claims. This argument fails in two respects. First, the Supreme Court of the United States, granting *certiorari* in *Baldwin v. Reese*, 541 U.S. 27 (2004), held that "ordinarily a state prisoner does not "fairly present" a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 32. The Supreme Court rejects petitioner's interpretation of "fairly present" because, in light of the exhaustion rule's policy objective of giving states the chance to correct constitutional error, finding that the petitioner's claim had been fairly presented in supplementary materials would effectively require the state courts to read those materials or forfeit their opportunity to decide the claim. *Id.* at 31.

- 32 -

Second, the petitioner's claim fails because *Reese* and *Wells* were decided based on rules of appellate procedure peculiar to Oregon. In discussing the jurisdiction of the Oregon Supreme Court, Oregon Rule of Appellate Procedure 9.20(2) provides, in pertinent part,  that "the questions before the Supreme Court include all questions properly before the Court of Appeals that the petition or the response claims were erroneously decided by that court. The Supreme Court's opinion need not address each such question. The court may consider other issues that were before the Court of Appeals."  The parallel provision in Ohio law is quite different. The  Ohio Courts require an appellant to state the claims that he wishes the Ohio Supreme Court to consider with a much greater degree of structure and specificity. The Rules of Practice of the Supreme Court of Ohio require that an appellant's brief contain "an argument, headed by the proposition of law that appellant contends is applicable to the facts of the case and that could serve as a syllabus for the case if appellant prevails...If several propositions of law are presented, the argument shall be divided with each proposition set forth as a subheading." Rule VI, Section 2(B)(4). Rather than suggesting that the Ohio Supreme Court will consider all claims raised, even in the appellate courts, like its Oregon counterpart, the Ohio rule requires each claim to be clearly and discreetly laid out in the appellant brief. Even apart from the holding of the United States Supreme Court in *Baldwin,* the holdings of the United States Court of Appeals, Ninth Circuit regarding Oregon state law have no bearing on petitioner's

application. Petitioner did not fairly present his claims to the highest court in the manner required by the state of Ohio. Consequently, petitioner is now barred by his procedural default from pursuing relief in the state courts of Ohio. *Leroy*, 757 F.2d at 100.

When a state prisoner is barred by a procedural default from raising a constitutional claim in the state courts, he may not litigate that claim in a § 2254 habeas corpus proceeding without showing cause for and actual prejudice from the default. *Engle v. Isaac*, 456 U.S. 107, 129 (1981); *Wainwright v. Sykes*, 433 U.S. 72, 87–88 (1977). Absent such a showing, the prisoner will be held to have waived his claims. *Leroy*, 757 F.2d at 97.

Petitioner attempted to argue cause and prejudice to excuse this default only in his "Objection to Report and Recommendation of the Magistrate." (Doc. 21). In that document, he raises the claim of ineffective assistance of counsel for the first time, claiming that his appellate attorney's mistaken belief that his claims were being "fairly presented" constitutes ineffective assistance of counsel sufficient to excuse his procedural default. Petitioner offers no evidence to support the claim that his counsel had such a belief, nor does he even attempt to address prejudice. The Court finds petitioner's claim of cause and prejudice to excuse his procedural default of Grounds Two, Four, Five and Seven to be without merit. Petitioner has failed to address the "prejudice" prong of that two prong conjunctive test with anything more than a bare allegation. Additionally, it is well settled law that a claim

of ineffective assistance of counsel can itself be defaulted, if it is not raised in the state court. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). Petitioner has neither raised such a claim in the state courts, nor offered cause and prejudice to excuse that fault. Neither has he made a colorable showing of actual innocence so as to demonstrate a fundamental miscarriage of justice, which would permit review of his defaulted claims even though cause and prejudice have not been established. *See McCleskey v. Zant*, 499 U.S. 467, 494-95 (1991); *Murray*, 477 U.S. at 496. Accordingly, petitioner's second, fourth, fifth and seventh grounds for relief are procedurally defaulted and waived for purposes of federal habeas corpus review.

Upon careful consideration of the petitioner's other objections, and upon conducting a ***de novo*** review of the record, especially in light of petitioner's objections, the Court finds that petitioner's contentions have either been adequately addressed and properly disposed of by the Judge or present no particularized arguments that warrant further specific responses by this Court. The Court finds that the Judge has accurately set forth the controlling principles of law and properly applied them to the particular facts of this case and agrees with the Judge that petitioner's Petition for Writ of Habeas Corpus be denied.

- 35 -

Accordingly, the Court accepts the factual findings and legal reasoning of the Magistrate Judge and hereby **ADOPTS** his Report and Recommendation dated May 4, 2006.  Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Docs. 1) is **DENIED WITH PREJUDICE**.

A certificate of appealability shall not issue with respect to Grounds One, Two, Four, Five, Six and Seven, and to petitioner's claim that the prosecutor expressed his personal opinion as to petitioner's guilt during closing argument in Ground Three of the petition, which this Court has concluded are waived and thus barred from review on procedural grounds, because under the applicable two-part standard enunciated in *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000), "jurists of reason would not find it debatable whether this Court is correct in its procedural ruling" as required under the first prong of the *Slack* standard.[5]  In addition, a certificate of appealability should not issue with respect to the claims alleged in Grounds Three and Eight of the petition, which were addressed on the merits herein, because petitioner has failed to make a substantial showing of the denial of a constitutional right based on these claims.  *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

---

[5]Because this Court finds petitioner has not met the first prong of the *Slack* standard, it need not address the second prong of *Slack* as to whether "jurists of reason" would find it debatable whether petitioner stated a valid constitutional claim.  *See Slack,* 529 U.S. at 484.

- 36 -

The Court **CERTIFIES** pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of the Order adopting this Report and Recommendation would not be taken in "good faith" and, therefore, **DENIES** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a); *Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

This case is **DISMISSED AND TERMINATED** on the docket of this Court.

**IT IS SO ORDERED.**


                                           s/Herman J. Weber
                                   Herman J. Weber, Senior Judge
                                   United States District Court